UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICENTA W.,

          Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

Case No. 25-cv-01991-SI

**ORDER REMANDING ACTION TO
AGENCY FOR FURTHER
PROCEEDINGS**

Re: Dkt. Nos. 16, 18

Plaintiff Vicenta W., who is self-represented, has filed this appeal from the Social Security Administration's decision denying her disability benefits. Plaintiff seeks reversal of the unfavorable decision issued on February 22, 2024, by Administrative Law Judge ("ALJ") Elias Xenos. The Court has reviewed the administrative record ("AR") and the parties' motions. *See* Dkt. Nos. 16, 18. For the reasons stated below, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and REMANDS this action for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Today's decision does not mean that plaintiff has won her disability claim. This Order agrees with plaintiff that the ALJ made several errors that impacted her case. This Order sends plaintiff's case back to the Social Security Administration and orders that the ALJ should reevaluate the medical opinions and plaintiff's testimony and should hold a second administrative hearing and issue a new decision on plaintiff's claim.

**BACKGROUND**

In the fall of 2019, plaintiff was involved in an on-site work-related accident while working

for a moving company. AR 196, 276, 513. On March 17, 2020, plaintiff had rotator cuff surgery on the right shoulder.[1] AR 366. Nevertheless, the pain continued and plaintiff complained of difficulty using her right arm/shoulder. Plaintiff also suffers from asthma and from depression stemming from her injury and inability to work. AR 274-275, 513, 517. Medical records from Kaiser Permanente show that she also suffered a left foot fracture in July 2023 and was in a cast for several months. AR 972-973.

On March 16, 2022, plaintiff protectively filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act. AR 34, 73. Plaintiff alleged April 1, 2020, as the onset date for her disabilities. She alleged disability due to: "torn rotator cuff; surgery; still torn rotator cuff; depression; anxiety; pain; asthma." AR 34. The Social Security Administration denied her benefits application both initially and on reconsideration. AR 47-49, 67-69. On January 9, 2024, ALJ Xenos held an administrative hearing by telephone. AR 11, 13. Plaintiff appeared at the hearing without representation. Vocational expert Dr. Leslie Lloyd also testified. AR 11. On February 22, 2024, the ALJ issued a decision denying plaintiff's disability claim. AR 73-82.

In the ALJ's decision, at step two of the five-step disability inquiry, the ALJ found plaintiff has the severe impairments of: status post right rotator cuff tear, asthma, and adjustment disorder with mixed anxiety and depressed mood. AR 76. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). AR 76-77. The ALJ specifically considered Listing 1.18 (abnormality of a major joint(s) in any extremity), Listing 3.03 (asthma), Listing 12.04 (depressive, bipolar and related disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorders). The ALJ then found plaintiff has the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally crawl; can frequently handle and finger

---

[1] The record contains references to two rotator cuff surgeries, but it is not clear when the second one occurred.

> with the right upper extremity; can never push or pull with the right upper extremity; can frequently reach in all directions with the right upper extremity except only occasionally overhead; can never work around unprotected heights or hazardous machinery; can never have concentrated exposure to temperature extremes or pulmonary irritants; and due to a combination of severe mental deficits, work limited to simple, routine tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, work-place changes; and can have only occasional interaction with the general public, co-workers, and supervisors.

AR 77.[2]

Plaintiff filed a request for review before the Appeals Council, which denied the request on January 2, 2025. AR 1-5. The ALJ's February 22, 2024 decision therefore became the final decision of the Social Security Commissioner. AR 1.

Plaintiff then filed an appeal before this Court under 42 U.S.C. § 405(g). Dkt. No. 1. Plaintiff requested, and the Court granted, several extensions of the deadline to file her brief. Dkt. Nos. 12, 13, 14, 15. Plaintiff then filed her brief by the deadline the Court set, and defendant filed a responsive brief. *See* Dkt. Nos. 16 ("Pl.'s Mot."), 18 ("Def.'s Mot."). Plaintiff's optional reply brief was due September 2, 2025. *See* Dkt. No. 15. Plaintiff did not file a reply brief. This matter is therefore ready for the Court's ruling.

**LEGAL STANDARD**

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.*

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla

---

[2] According to Social Security regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ." 20 C.F.R. § 404.1567(b).

<div style="margin-left:auto">United States District Court<br>Northern District of California</div>

but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Plaintiff states that the ALJ made several errors in the decision. She argues that the ALJ improperly rejected her testimony regarding her symptoms. Pl.'s Mot. at 6.[3] She also argues that the ALJ erred by not considering the medical opinion of her treating physician, Dr. Centeno. *Id.* at 11-13, 17. The Court agrees with plaintiff that the ALJ made several errors: the ALJ improperly rejected plaintiff's statements regarding how her symptoms impact her daily life and the ALJ did not consider the opinion of plaintiff's treating physician, Dr. Centeno. Because the Court agrees with plaintiff that the ALJ made errors that impacted the decision, the Court does not address each additional argument plaintiff raises in her brief.

### I.      Plaintiff's Symptom Testimony

#### A.      Legal Standard

The Ninth Circuit follows a two-step test for deciding what weight to give to a plaintiff's symptom testimony. At step one, the ALJ must ascertain whether the plaintiff has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the plaintiff satisfies

---

[3] Because plaintiff's brief does not have a consistent page numbering system, the Court refers to the page numbers stamped at the top right-hand corner of the page by the Court's Electronic Case Filing system.

United States District Court
Northern District of California

step one, and there is no evidence of malingering, then at step two, the ALJ can reject the plaintiff's testimony about the severity of his symptoms only by providing specific, clear, and convincing reasons for doing so. *Id.* If the ALJ finds that the plaintiff's testimony regarding the severity of his symptoms is not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo*, 871 F.3d at 678.

### B.    Discussion

Plaintiff argues that the ALJ failed to provide specific reasons for finding plaintiff's testimony not credible and failed to take into consideration plaintiff's hearing testimony that she now requires a caretaker to assist her with "a lot of [her] restrictions at home." Pl.'s Mot. at 6, 13. Defendant responds that plaintiff's argument is made "with no specificity" and that the ALJ provided clear and convincing reasons to reject her symptom complaints. Def.'s Mot. at 4-5.

Here, when the ALJ found plaintiff capable of performing "light work," the ALJ rejected plaintiff's statements concerning the intensity of her symptoms. *See* AR 77-78. The ALJ acknowledged that plaintiff's function report states that "she has issues accomplishing her daily tasks[,]" has reduced grip strength in her right hand, and cannot lift or carry things over 7 pounds. AR 78. Even so, the ALJ found these statements were not consistent with the evidence. *Id.* (citing Ex. 16E). In particular, the ALJ noted that plaintiff's December 2022 function report "listed she could still perform duties such as cleaning, laundry, household repairs, walk, run, and attend the gym." *Id.* (citing Ex. 16E at 1, 3).

The Court finds that the ALJ's rejection of plaintiff's symptom statements based on the list of daily activities in the function report is not supported by substantial evidence in the record. Instead, it appears that plaintiff misread this question, listing activities she could do *before* her injury, not activities she currently does. Plaintiff's function reports, third-party function reports, and the hearing testimony consistently describe that plaintiff was limited in her ability to do daily chores or walk outside.

United States District Court
Northern District of California

Earlier in the December 2022 function report, plaintiff said that *before* her injury she "was able to live life, very proactive going to the gym. All of my jobs (previous) all active many things, walking, running, carrying." AR 263. She said that now she needs assistance to dress, bathe, care for her hair, and use the toilet. *Id.*; *see also* AR 224 (May 2022 Function Report, stating same). She wrote that walking, with the movement of her swinging arm, tremendously hurts. AR 262. She can no longer prepare meals because of her reduced grip strength in her right hand. AR 264. She said she "needs assistance completing all previous chores I was able to do by myself." *Id.* She said she "rarely go[es] outside." AR 265.

Her friend Nisha Hill completed a Third-Party Function Report at the same time. *See* AR 254-261. This report corroborated the limitations on daily activities that plaintiff listed. *See* AR 255-256; *see also* AR 216 (May 2022 Third-Party Function Report, stating same). Ms. Hill further stated: "Cleaning, ironing, laundry, shampoo carpets are all put to a hault [sic]. Grip is not good in dominant hand." AR 256. Ms. Hill stated it may take plaintiff all day if she tries to do chores alone, sometimes going into the next morning "due to frequent pauses, or in too much pain to continue." AR 256.

At the February 2024 hearing, plaintiff also testified that she now has a caregiver to assist her. AR 16. She moved in with her mother a few months earlier because "[i]t just became that I couldn't do much[,"] that her shoulder was getting worse and locking up, and that they decided it was best for her mother to be around for when plaintiff's caregiver was not there. *Id.*

Thus, taken in context, it appears to have been a misunderstanding that plaintiff listed all of the activities that the ALJ quoted, AR 78, as ones that she can currently perform rather than listing them in the space asking which activities she used to perform *before* her injury.

The Court notes that plaintiff's function report does state in several places that plaintiff continues to go to the gym. AR 265, 266. However, the function report does not indicate what plaintiff does at the gym and the ALJ did not ask about this at the hearing. "Recognizing that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit "ha[s] held that only if her level of activity were inconsistent with a claimant's claimed limitations would these activities have any bearing on her credibility." *Garrison*,

6

759 F.3d at 1016 (internal quotation marks and brackets omitted) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  If the ALJ found the references to the gym ambiguous or confusing, then it was incumbent on the ALJ "to fully and fairly develop the record and to assure that the claimant's interests are considered."  *See Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Without knowing what plaintiff did at the gym, this was not a clear and convincing reason for the ALJ to reject plaintiff's testimony regarding her pain symptoms.

## II.    Medical Opinions

### A.    Legal Standard

For applications filed on or after March 27, 2017, such as here, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Under the revised regulations, 20 C.F.R. § 404.1520c and § 416.920c, the ALJ will consider medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5) . . . ."  20 C.F.R. § 416.920c(a).  Those factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  *Id.* § 416.920c(c).  In determining how persuasive a medical opinion is, the most important factors are supportability and consistency.  *Id.* § 416.920c(a), (b)(2).  "Therefore, [the agency] will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions . . . ."  *Id.* § 416.920c(b)(2).  The agency "may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) . . . ."  *Id.*  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792.  "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source."  *Id.* at 791 (citing 20 C.F.R. § 404.1520c(b) (internal quotation marks omitted)).

*United States District Court*
*Northern District of California*

**B.      Discussion**

Plaintiff argues that the ALJ failed to take into account the limitations assigned by Dr. Centeno, who performed her rotator cuff surgery and continued to see her for many months post-surgery. *See* Pl.'s Mot. at 11-13, 17. She states, "I do not see my treating physician's report which is the main key to this case. His findings and restrictions are not taken into consideration given Dr. Centeno was my surgent [sic] at the time . . . ." *Id.* at 11. Plaintiff also states that her treating doctor limited her to lifting 7 pounds, which the record shows was Dr. Centeno's recommendation at various points.

Defendant does not address plaintiff's argument regarding the exclusion of Dr. Centeno's findings. Defendant states that the State agency medical consultants (Dr. H. Jone, MD and Dr. L. DeSouza, MD), who reviewed plaintiff's disability claim at the initial and reconsideration stages, found plaintiff capable of a reduced range of medium work. Def.'s Mot. at 6. Defendant also states that the consultative examiner who conducted a physical examination (Dr. Rose Lewis, MD) found plaintiff able to perform a reduced range of light work and that the examiner who performed a mental status evaluation (Dr. Aparna Dixit, PsyD) found plaintiff could do unskilled work with some social limitations. *Id.* Defendant goes on, "No other providers offered opinions to contradict these assessments." *Id.*

Defendant is incorrect, both by mischaracterizing the findings of Dr. Lewis and because Dr. Centeno provided a contradictory assessment numerous times over the course of 2020 and 2021. Defendant's brief also incorrectly states that plaintiff alleges disability from October 2022, rather than April 2020. *See* Def.'s Mot. at 7 (citing AR 73). Defendant then goes on to argue that "[t]he ALJ, in detail, discussed evidence beginning in October 2022 in chronological order, up to evidence in the record dated shortly before the hearing decision." *Id.*

The problem is that the ALJ skipped over the many months of detailed treatment records and correspondence with the claims adjuster from plaintiff's post-surgery visits to her orthopedic provider.[4] Dr. Centeno, who performed her surgery, saw plaintiff almost monthly following her

---

[4] The Court notes that the printed quality of some of these records is very bad and that portions of the medical records from this period are illegible.

March 2020 surgery and through the beginning of 2021. The ALJ scarcely discussed these notes and did not at all address Dr. Centeno's repeated work restrictions limiting plaintiff to lifting no more than 5 or 7 pounds.

To summarize, Dr. Joseph Centeno, MD performed plaintiff's March 2020 rotator cuff surgery. AR 366. Following the surgery, he saw her about monthly, through early 2021. On June 23, 2020, Dr. Centeno placed plaintiff on work restriction of "No lifting more than 5 pounds occasionally reaching above shoulder height." AR 331. Dr. Centeno stated that plaintiff's anticipated "MMI" (maximum medical improvement) was 6 to 8 months postoperatively. *Id.*; *see also* AR 390. A few weeks later, he changed her MMI to "Unknown at this point." AR 331-332. The restriction that plaintiff lift no more than 5 pounds and only occasionally reach above shoulder height remained in place through visits on July 9, July 28, August 11, August 25, and September 8, 2020. *See* AR 328, 331-332, 420, 432. On October 13, 2020, Dr. Centeno changed her work restrictions to no lifting more than 7 pounds and no reaching above shoulder height. AR 427. These restrictions remained in place through visits on November 24, 2020; December 11, 2020; January 26, 2021; and February 23, 2021. AR 425, 487-488, 493, 499. A March 2021 treatment note from PA-C Catherine Doss at Bay Area Orthopedic (where Dr. Centeno practiced) repeated these restrictions.[5] *See* AR 480.

Despite the numerous and detailed treatment records from Dr. Centeno and others at Bay Area Orthopedic, the ALJ did not discuss Dr. Centeno's opinions at all. Failing to address Dr. Centeno's opinions at all violates the Social Security regulations. *See Woods*, 32 F.4th at 791-92.

In addition, by failing to address Dr. Centeno's opinion, the ALJ may have erroneously evaluated other medical opinions in the record. One of the "most important factors" for the ALJ to consider in deciding how much weight to give a medical opinion is consistency. *See* 20 C.F.R. § 404.1520c(a), (c)(2). "Consistency means the extent to which a medical opinion is 'consistent . . .

_____

[5] The record also contains a letter dated October 20, 2021, from RTGR Law LLP to a claims administrator, referencing a September 28, 2021 report by Dr. Centeno. The law firm states that Dr. Centeno placed plaintiff on permanent work restrictions "of no lifting, pushing and pulling more than eight pounds and occasional reaching above shoulder height." AR 477. However, the underlying report from Dr. Centeno does not appear to be part of the record in this case.

United States District Court
Northern District of California

with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  In finding that plaintiff could do "light work" with some restrictions, the ALJ found the opinion of Dr. Lewis "grossly unpersuasive, as it is not consistent with the medical evidence of record." *See* AR 79.  Dr. Lewis, who was brought in to do a consultative physical examination of plaintiff in August 2022, stated that plaintiff could lift only 10 pounds on the left and less than 10 pounds on the right and could stand and walk up to four hours. AR 520.  The ALJ rejected this opinion as "not consistent" with the record, even though it was consistent with Dr. Centeno's opinion.

Dr. Centeno's and Dr. Lewis's opinions were also consistent with the opinion of Dr. Jeffrey Lee Gao, MD, who treated plaintiff at Kaiser following a July 2023 left foot fracture she suffered while at work.[6]  At an August 22, 2023 visit, Dr. Gao placed plaintiff on modified work duty, limiting her to standing and walking occasionally (up to 25% of a shift), not climbing ladders or using scaffolds, and no lifting/carrying/pushing/pulling more than 10 lbs.  AR 973-974.  The foot fracture occurred after the Social Security agency had evaluated plaintiff's claim at the initial and reconsideration levels but before her administrative hearing in January 2024.  Although there was evidence in the record from this injury, along with the work restrictions imposed by Dr. Gao, the ALJ did not ask about the foot fracture at the hearing or address Dr. Gao's opinion in his decision.

To summarize, the Court finds that it was error for the ALJ not to address Dr. Centeno's opinions at all and that this error could have impacted the entire residual functional capacity finding, including the weighing of Dr. Lewis's opinion.  It was also error for the ALJ not to address the opinion of Dr. Gao.  Plaintiff is entitled to further administrative proceedings, including a new hearing to develop the record further as well as a new decision on her disability claim.  Should the agency find it appropriate, the agency may also reopen the record to receive new medical evidence, particularly on the impact of the recent foot fracture.

---

[6] At the hearing, plaintiff testified that she worked full-time "at the Transportation for dispatch" from April to September 1, 2023.  AR 17-18.

United States District Court
Northern District of California

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment.  The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: March 20, 2026

_____

SUSAN ILLSTON
United States District Judge

11